1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

7
8

**Leonard Guzman,**
Petitioner
-vs-
**Dora B. Schriro, et al.,**
Respondents

CV-07-0295-PHX-SMM (JRI)

9
10

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

11

## I. MATTER UNDER CONSIDERATION

12

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence,

13

Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on

14

February 9, 2007 (#1) in case CV-07-0295-PHX-SMM (JRI), and a second Petition on

15

February 9, 2007 (#1) in case CV-07-0296-PHX-SMM (JRI).  The two proceedings were

16

consolidated, and Respondents filed their Response on September 7, 2007 (#21), a

17

supplement on July 3, 2003 (#47), a Second Supplement on September 5, 2008 (#51).

18

Petitioner filed a Traverse on October 29, 2007 (#30), an Objection to Supplement on July

19

16, 2008 (#49), and a Reply to Supplement on September 26, 2008 (#52).

20

In the meantime, on July 2, 2008, Petition filed a Motion for Jury Trial (#45).

21

Respondents filed their Objection on July 3, 2008 (#48).  Also, on February 13, 2009,

22

Petitioner filed a Motion for Relief (#57) seeking temporary relief.  Respondents filed their

23

Response on February 19, 2009 (#58).

24

The Petitioner's Petition and Motions are now ripe for consideration.  Accordingly,

25

the undersigned makes the following proposed findings of fact, report, and recommendation

26

pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of

27

Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

28

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's first petition for post-conviction relief, the trial court summarized the factual background as follows:

> On Apri1 15, 1999, the State charged Defendant by Indictment in cause number CR1999·091712 with three counts of sexual assault (class 2 felonies); one count of sexual abuse (a class.5 felony); and one count of kidnapping [sic] (a class 2 felony). The charges arose from an incident that occurred on December 9, 1998, during which Defendant restrained his girlfriend's roommate and sexually assaulted her.
> . . .
> On August 18, 1999, the State charged Defendant by Indictment in cause number CR1999-094153, with conspiracy to commit first degree murder. That charge arose from an incident in which Defendant attempted to hire a hit man to murder [ ] the victim in the sexual assault case.

(Exhibit X, PCR Order 5/21/03. *See also* Exhibit B, Indictment; and Exhibit EE Indictment.)

(Exhibits to the Answer (#21) are referenced herein as "Exhibit ___.")

### B. PROCEEDINGS AT TRIAL

Petitioner pled not guilty to the charges, and counsel Michael A. Vincent appeared on his behalf.   (Exhibit F, Not. Appear.)   Vincent moved to withdraw, and Deputy Public Defender Scott Silva was appointed. (Exhibit I, M.E. 1/240/00.)   Petitioner them moved to remove counsel, and waived counsel. (Exhibit K, Motions & Waiver.)   The motion was granted and Attorney Silva was appointed to advise Petitioner. (Exhibit L, M.E. 2/11/00). Attorney Silva then asserted a conflict of interest, and James Leonard of the Legal Defender's Office was appointed to serve in an advisory capacity.  (Exhibit L, M.E. 2/16/00 and M.E. 2/29/00.)  Finally, upon Petitioner's motion, attorney Leonard was appointed to represent him.  (Exhibit L, M.E. 3/24/00.)  The matter was set for trial.  (*Id.*)

On May 12, 2000, Petitioner entered into plea agreements in each case.  In the sexual assault case, Petitioner agreed to plead guilty to one count of sexual assault with one prior felony conviction in exchange for dismissal of the remaining charges.  (Exhibit O.)  In the conspiracy to commit murder case, he agreed to plead guilty to one count of attempted

conspiracy to commit first degree murder.  (Exhibit HH.)  The parties agreed that the sentences would be consecutive, but the total term of imprisonment would not exceed 21 years.  (Exhibits O and HH, Plea Agreement; Exhibit X, PCR Order 5/21/03.)

Petitioner appeared for sentencing on June 15, 2000.  The pleas were determined to be entered knowingly and voluntarily and were accepted. Petitioner was sentenced to the presumptive terms of 10.5 years on the sexual assault and 9.25 years on the attempted conspiracy charge. (Exhibit P Sentence; and Exhibit JJ Sentence. *See also* Exhibit X, PCR Order 5/21/03.)   The court pronounced the dismissal of Counts 2, 3, 4, and 5 in the sexual assault case, number  CR1999·091712, as well as allegations of addition prior felony convictions and unfiled charges arising out of a Tempe Police Department investigation and a Maricopa County Sheriff's Office investigation.  (#47, Exhibit YY, R.T.  6/15/00 at 29.) However, the Sentence failed to include Count 5 of the sexual assault case as one of the counts being dismissed.  (Exhibit P, Sentence at 3.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Having plead guilty, Petitioner had no right to a direct appeal, and did not file one. (CV-07-0295 Petition, #1 at 2; CV-07-0296 Petition, #1 at 2.)

## D.  PROCEEDINGS ON FIRST PCR PETITION

**Before Trial Court** - On June 29, 2000, Petitioner filed Notices of Post-Conviction Relief in both cases.  (Exhibits R and KK.)  Deputy Public Defender Stephen Collins was appointed, and ultimately filed a Notice indicating an inability to find issues for review, and seeking an extension of time for Petitioner to file a pro per petition.  (Exhibit S.)  After obtaining several extensions, Petitioner filed his separate pro per Petitions on October 18, 2002.  (Exhibits T and MM.)

In the sexual assault case, he argued that counsel was ineffective for: (1)  failing to challenge the indictments based upon unspecified errors in the grand jury proceedings; (2) failing to adequately advise Petitioner of his rights in unspecified ways.  (Exhibit T.)  In his

reply, he added claims that counsel failed to adequately investigate the informant used in the conspiracy case. (Exhibit W, PCR Reply.)

In the conspiracy case, he argued that counsel was ineffective for: (1) failing to file a motion to suppress; and (2) failing to raise various objections; and (3) failing to adequately advise petitioner. (Exhibit MM.)

On May 21, 2003, the trial court summarily dismissed the petitions for failure to state any colorable claims.  (Exhibit X.)

Petitioner filed motions for rehearing in both proceedings. (Exhibits Y and OO.)  On November 10, 2003, the trial court denied the motions.  (Exhibit OO, M.E. 11/10/03.)

**Before Arizona Court of Appeals** - On July 12, 2004, Petitioner filed a Petition for Review (Exhibit QQ), seeking review of the joint order denying his PCR petitions.  He filed a Motion to Amend Petition for Post-Conviction Relief, which was denied as an improper attempt to raise issues not presented to the trial court.  (Exhibit SS, Motion and Order 3/4/05.)  On June 17, 2005, the Arizona Court of Appeals summarily denied the petition.

**Before Arizona Supreme Court** - Petitioner then sought review by the Arizona Supreme Court. (Exhibit UU), which was summarily denied on February 13, 2006 (Exhibit VV).

**E.  PROCEEDINGS ON SECOND PCR PETITION**

On March 22, 2004 (in the interim between the denial of his first petition, and his petition for review therefrom), Petitioner filed a second Notice of Post-Conviction Relief in each case.[1]  (Exhibits Z and PP.)  On April 14, 2004, the trial court summarily dismissed the notices as barred under Arizona's preclusion bar, Rule 32.2(a), Arizona Rules of Criminal Procedure.  (Exhibit AA, M.E. 4/14/04.)

---

[1]  Petitioner's Petitions deny filing a second post-conviction relief proceeding. (#1 at 2-3.)  However, his Traverse does not rebut Respondent's assertions that such proceedings were filed, nor does he offering anything to rebut the records provided by Respondents.  *See* 28 U.S.C. § 2248 (allegations of answer "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true").

1    Petitioner did not seek further review of this order.

2

3    **E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

4        **Petition** - Petitioner commenced the instant federal habeas proceedings on February

5    9, 2007 by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254  (#1) in

6    case CV-07-0295-PHX-SMM (JRI), and a second Petition (#1) in case CV-07-0296-PHX-

7    SMM (JRI).

8        Petitioner's Petition in case number CV-07-0295 challenges his conviction in the

9    attempted murder case (CR-1999-094153) on the following bases: (1) his guilty plea was not

10   voluntary; (2) he received ineffective assistance of counsel; (3) the use of an outdated prior

11   conviction violated his rights against double jeopardy; and (4) the prosecution failed to

12   disclose favorable evidence in electronic surveillance.

13       His petition in case number CV-07-0296 challenges his conviction in the sexual

14   assault case (CR-1999-091712) on the following bases: (1) his guilty plea was not voluntary;

15   (2) the grand jury had been improperly impaneled; (3) he received ineffective assistance of

16   counsel; (4) the use of an outdated prior conviction violated his rights against double

17   jeopardy.

18       **Consolidation** - In response to Respondents' motion (#11), this Court consolidated

19   proceedings on the two habeas petitions pursuant to Federal Rule of Civil Procedure 42(a).

20   (Order 8/3/07, #17.)

21       **Answer** - On September 7, 2007 Respondents filed their Answer (#21), arguing that

22   Petitioner's guilty plea waived all claims except his allegations in Ground 1 of each Petition

23   that his guilty pleas were involuntary.  As to Ground 1, Respondents argue that the trial court

24   reasonably determined that the claim is without merit.

25       **Traverse -** Petitioner filed a Traverse on October 29, 2007 (# 30).  Petitioner argues

26   that his guilty plea does not bar any of his claims, and that he received ineffective assistance

27   of counsel, which rendered his plea involuntary.

28       Petitioner also filed a demand for a jury trial (#45), to which Respondents have

objected (#48) asserting that there is no right to a jury trial in a habeas proceeding, citing 28 U.S.C. § 2243.

**First Supplements** - On July 3, 2003, the Court directed (#46) Respondent to supplement the record with the transcript of the plea proceeding and concerning the dismissal of Count 5 of the indictment.  The same date, Respondents responded (#47), arguing that the trial court orally dismissed Count 5, and that the oral pronouncement was sufficient and supersedes any written orders.  Petitioner filed an Objection to Supplement on July 16, 2008 (#49), arguing that any plea was involuntary, and that Respondents are inconsistent in their reliance on the written plea agreements.

**Second Supplements** - On August 15, 2008, the Court ordered (#50) the parties to supplement their briefs to address: the availability of concurrent sentencing had Petitioner gone to trial; the efficacy of Petitioner's plea as a waiver of a double jeopardy claim; and whether the failure to disclose surveillance of a confidential information denied Petitioner exculpatory information and rendered his plea involuntary.   Respondents filed a Second Supplement on September 5, 2008 (#51).[2]  Petitioner filed Reply on September 26, 2008 (#52).[3]

Concurrent Sentencing - As to the availability of concurrent sentencing, Respondents acknowledge that a concurrent sentence was possible at trial on the pled to offenses, but note that the court alerted Petitioner to this at his plea proceeding.  Moreover, they argue, any trial would likely have been on all charges, including sexual assault charges which would have

---

[2]   As discussed hereinafter, Respondents Second Supplemental Response raises several claims of procedural default. Because the undersigned finds the claims without merit, the exhaustion and procedural default issues are not reached.  *See*  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

[3]  The undesigned notes that Petitioner repeatedly points to his lack of legal research materials and a computer, and his resulting disadvantage.  (*See e.g.* #52 at 1.)  However, a greater disadvantage may be imposed by Petitioner's attempts at flowery language which often serve only to obfuscate his arguments.  Clear, simple, and precise wording normally better serves *pro se* litigants.

required consecutive sentencing under Ariz. Rev. Stat. § 13-1406(C) (1998), and that his exposure at trial was far greater than the agreed to sentence, and given the nature of the charges consecutive sentences remained a likelihood.

Petitioner replies that the relevant inquiry is the voluntariness of his plea, that Respondents have misquoted the plea colloquy, Petitioner made no agreement with the State, the statutes referenced by Respondents were not in the indictment or plea agreement and are therefore not applicable, and it is questionable whether the State could or would have pursued the dismissed charges especially given the victim's insistence on Petitioner receiving the maximum sentence possible.

<u>Double Jeopardy</u> - As to the double jeopardy issues, Respondents argue that Petitioner's guilty plea did waive these claims because no double jeopardy issue was apparent on the face of the record, and that he procedurally defaulted any  double jeopardy claim because he did not fairly present such a claim to the trial court, but raised it for the first time in his reply in support of his petitions.  Moreover, Respondents argue, the use of a prior conviction to enhance a sentence is not a double jeopardy violation.  Finally, Respondents argue that under Ariz. Rev. Stat. § 13-604(U)(1)(b) (1999) Petitioner's 1985 conviction was not stale for sentence enhancement purposes because the ten year period or such enhancement  was extended by his 1992 incarceration on other charges, and that because he had four felony priors, the third or greater felonies counted as historical priors under Ariz. Rev. Stat. § 13-604(U)(1)(d) (1999).

Petitioner replies that he checked the double jeopardy box on the PCR petitions, and argued it in his motion for rehearing, that use of any prior conviction as a basis of for enhancement is a violation of double jeopardy, and that he challenges only the use of his trafficking-in-stolen property conviction and the Respondents' reading of the historical priors statute is strained.

<u>Failure to Disclose</u> - As to the failure to disclose, Respondents argue that any undisclosed evidence would have related to the affirmative defense of entrapment, and that disclosure of affirmative defenses is not required under *United States v. Ruiz*, 536 U.S. 622

(2002).  Respondents further argue that any failure to by counsel to discuss such a defense would not render the plea involuntary, and that Petitioner made an explicit waiver of such defenses in his plea agreement.   Respondents argue that Petitioner's presentation of an ineffective assistance of counsel claim did not encompass a claim of non-disclosure, and that presentation in a motion for rehearing was insufficient, and therefore the claim is procedurally defaulted.  They argue the claim is without merit because Petitioner knew the essential facts concerning the confidential information, and has failed to present evidence that disclosure would have been beneficial.

Petitioner replies that he is incapable of providing the proof of the value of the undisclosed tapes precisely because they were undisclosed, and counsel was ineffective for failing to seek their disclosure.

**Motion for Temporary Relief** - On February 13, 2009, Petitioner filed a Motion for Relief (#57) seeking temporary relief in the form of immediate release to the custody of his mother, based upon the his inability to mourn with his family the May, 2008 death of his sister.  In addition, Petitioner requests an order directing the Clerk to provide him copies of the Bail Reform Act of 1984.  Respondents filed their Response on February 19, 2009 (#58), arguing *inter alia*, that Petitioner fails to show exceptional circumstances to justify such release.

## III. APPLICATION OF LAW TO FACTS

### A.  DEMAND FOR JURY TRIAL

Plaintiff has filed a "Motion for Right to Jury Trial" (#45) demanding a jury trial in this habeas proceeding pursuant to Rule 38, Federal Rules of Civil Procedure. No clear controlling precedent addresses the authority of a magistrate judge to resolve such a motion. *But see Lawrence v. Hanson,* 197 F.Supp.2d 533, 536 (W.D.Va. 2002) ("request for a jury trial is 'not dispositive of a claim or defense of a party'").  Accordingly the request is addressed herein.

Rule 39(a) provides that a demand for a jury trial is ineffective if "the court, on

motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." As noted by Respondents, the statutes governing habeas corpus actions provide for the Court to determine all factual issues.

> The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.

28 U.S.C. § 2243. In *O'Keith v. Johnston*, 129 F.2d 889, 891 (9th Cir. 1942), the Ninth Circuit addressed the predecessor to § 2243 and held that it's direction "that the hearing so held be 'in a summary way' does not require or permit trial of facts by a jury." *See also* Fed. Proc. L.Ed. § 41:109 (2008).

There thus being no federal right to a jury trial in these habeas proceedings, Petitioner's Motion should be denied.


**B. VOLUNTARINESS OF GUILTY PLEA**

In Ground 1 of his Petitions, Petitioner argues that his guilty pleas were not knowingly and voluntarily made. In support of this claim, Petitioner makes the following assertions:

1. Trial counsel coerced Petitioner into accepting the plea agreements.

2. Trial counsel failed to properly advise Petitioner about the potential for a concurrent sentence at trial.

3. Trial counsel improperly advised Petitioner that the other charges would be dismissed.

4. Trial counsel failed to advise Petitioner about the rights he would be giving up by pleading guilty.

**Law on Voluntariness** - "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the

range of competence demanded of attorneys in criminal cases. . . . [A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective].' " *Hill*, 474 U.S. at 56-57 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)) (internal quotation marks and citation omitted).

**Law on Ineffective Assistance** - Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88, 694. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

Deficient Performance - In determining whether counsel performed deficiently, the court must focus on whether the attorney's advice was appropriate under the circumstances existing at the time of the guilty plea. *See Strickland*, 466 U.S. at 690.

Prejudice - The defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability "that but for counsel's errors, he would either have gone to trial or received a better plea bargain." *U.S. v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004). *See also Strickland*, 466 U.S. at 694. The Court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision). This is an objective analysis that requires the court to examine what a reasonable person would do "without regard for the 'idiosyncrasies of the particular decisionmaker.' " *Hill*, 474 U.S. at 60 (quoting *Strickland*, 466 U.S. at 695).

**Law on Habeas Standard for Relief** - While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam). Rather, to justify habeas relief a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted. 28 U.S.C. §2254(d)(1). Similarly, habeas relief may be granted based on an error in a factual determination only where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, a state prisoner is not free to attempt to retry the facts of his case in the federal courts. There is a well established presumption of correctness of state court findings of fact which limits the use of new evidence not presented to the state courts. This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

In *Lockyer v. Andrade,* 538 U.S. 63 (2003), the Court rejected a Ninth Circuit mandate for habeas courts to review habeas claims by conducting a *de novo* review prior to applying the "contrary to or unreasonable application of" limitations of 28 U.S.C. § 2254(d)(1). In doing so, however, the Court did not preclude such an approach. "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)--whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 71.

Because the undersigned finds Petitioner's claims to be without merit, the application of these limitations is not addressed.

**Coercion** - Petitioner argues that trial counsel coerced Petitioner into accepting the plea agreements. Petitioner avows that counsel repeatedly "said to petitioner, 'if you do not

sign these pleas you will be found guilty by the jury within thirty minutes.'" (Petition, #1 at 5.)  Petitioner relates that counsel told him "'if you do not sign these plea agreements, you will not be getting out of prison and be able to walk your daughter down the aisle and give her hand away when she gets married." (*Id.*) Respondents argue that the trial court's rejection of Petitioner's claim of coercion by trial counsel "was not an unreasonable application of *Strickland*."  (Answer, #21 at 15-16.)  In ruling on this issue during Petitioner's first PCR proceedings, the trial court found:

> The Court does not believe that trial counsel was ineffective because he told Defendant some harsh truths. Advising a defendant to accept a reasonable plea agreement in a situation where a defendant is almost certain to be convicted of the charged offenses if the cases proceed to trial is effective assistance of counsel, not ineffective assistance.

(Exhibit X, M.E. 5/21/03 at 5.)

Petitioner fails to show that the trial court was in error.  "Mere advice or strong urging by third parties [such as defense counsel] to plead guilty based on the strength of the state's case does not constitute undue coercion." *Iaea v. Sunn,* 800 F.2d 861, 867 (9th Cir. 1986).

In this case, as a result of his plea agreement, Movant obtained the dismissal of many serious charges with the potential for far more prison time than what Petitioner received.  In the sexual assault case, his plea resulted in the dismissal of two counts of sexual assault (class 2 felonies); one count of sexual abuse (a class.5 felony); and one count of kidnaping (a class 2 felony).  In the conspiracy to commit murder case, the charge was reduced to an attempt. Petitioner offers nothing to suggest that the risk of conviction on these other charges was so unlikely that counsel's advice would amount to a fabrication rather than competent advice. Rather, the trial court properly characterized counsel's comments as "harsh truths."  However compelling, they were not coercion.

**Advice re Sentencing** - Petitioner argues that trial counsel was ineffective because he failed to properly advise Petitioner about the potential for a concurrent sentence at trial. (Petition, #1 at physical p. 15, Part J, p. "2".)  Counsel can be performing deficiently if he fails to advise a defendant of the negative effect of the agreement for consecutive sentencing. *See State v. Young*, 106 Ariz. 589, 590, 480 P.2d 345, 346 (Ariz. 1971) ("Only one

1    experienced in the law of sentencing would be aware that the trial judge has the discretion

2    to order concurrent sentences for separate crimes").

3          Respondents correctly argue that Petitioner had no option for concurrent sentencing

4    *under the terms of the plea agreement*.[4]   Indeed, it was on this basis that the trial court

5    rejected this portion of Petitioner's claim.

6          …Specifically, Defendant faults his attorney for failing to advise him
            that he had the "option" to have both sentences run concurrently. The
7          Court finds that Defendant has failed to raise a colorable claim of
            ineffective assistance of counsel. The reason trial counsel did not advise
8          Defendant there was a possibility that he could receive concurrent
            sentences was because that was not an option under the plea agreement
9          offered to Defendant by the State. The plea agreement stipulated that
            the sentences imposed had to run consecutive to each other. Defendant
10         did not receive any erroneous advice regarding the range of sentence
            from either his attorney or from the Court.

11   (Exhibit X, Order 5/21/03.)

12          This appears to miss the point of Petitioner's claim, *i.e.* that counsel failed to alert

13   Petitioner that (despite the fact that the plea agreement stipulated to consecutive terms), upon

14   trial the court could have issued concurrent sentences, thus rendering the plea agreement less

15   favorable.[5]

16          Even so, Respondents also argue that Petitioner is mistaken about the potential for

17   concurrent sentences at trial.   Respondents argue that there were dismissed charges which

18

19

20          [4] Petitioner argues that he "did not agree with the State that the sentences will run
21   consecutive" because he spoke only with counsel.  (#52 at 3.)  The written plea agreement
     signed by Petitioner and the State clearly included such an agreement.  (*See* Exhibit O, Plea
22   Agreement at 1.)  A separate oral agreement is not required.

23          [5] In his PCR proceeding in the sexual assault case, the claim was not so plainly stated.
24   Petitioner merely complained that counsel had failed to advise him that under Ariz. Rev. Stat.
     § 13-116 his sentences had to be concurrent.  (Exhibit W, Reply at 9.)  However, in the
25   conspiracy to commit murder case, he was plainer about his charge that counsel failed to
     advise him of his "option to have both cases run concurrent."  (Exhibit MM, Petition at 11.)
26   Obviously, the trial court read this as alleging an "option" at the sentencing on the plea.  Read
     in the context of Petitioner's claim that the plea was not knowing and  he was "unaware", it
27   is clear that the "option" was between the plea agreement and his opportunities at trial.  It is
     that "option" which is the crux of a knowing and voluntary determination.
28

mandated a consecutive sentence, and a likelihood of consecutive sentences overall.[6]

As to mandatory consecutive sentences, Respondents point to Ariz. Rev. Stat. § 13-1406(C) (1998),[7] which provided: "The sentence imposed on a person for a sexual assault shall be consecutive to any other sexual assault sentence imposed on the person at any time." Petitioner had been charged with three counts of sexual assault, with at least two historical felony convictions, which each carried a presumptive sentences of 15.75 years.  Those charges alone could have amounted to a combined sentence of 47.25 years.

In addition, under Arizona law, the trial judge generally has discretion whether to order sentences to be run consecutively or concurrently.  *State v. Young,* 106 Ariz. 589, 590, 480 P.2d 345, 346 (Ariz. 1971) ("the trial judge has the discretion to order concurrent sentences for separate crimes"); *State v. Girdler,* 138 Ariz. 482, 489, 675 P.2d 1301, 1308 (Ariz. 1983) ("The decision to impose consecutive sentences rests with the discretion of the

---

[6] Petitioner argues that there was no likelihood that the state would have gone to trial on all of the charged offenses. Petitioner's theory is that the victim wanted maximum punishment, and therefore the prosecutor would not have agreed to dismiss any charges unless they were unprepared and unwilling to go to trial on them.  Petitioner ignores the possibility that the sexual assault victim simply preferred to avoid testifying, or that the prosecution preferred to avoid the risks always inherent in trial, or simply thought the outcome obtained by the plea agreement was just and in the best interests of the State.

[7] Petitioner argues that the sentencing statutes cited by Respondents could not have been applied to him because the specific subsections were not identified in the Indictment. Citation of the specific subsections is not necessarily required.  *See State v. Kidd,* 116 Ariz. 479, 481, 569 P.2d 1377, 1379 (Ariz.App. 1977) ("when the Legislature spells out a specific crime in a subsection of a statute which is the only subsection that will apply to the facts of a case the conviction will be upheld even though the defendant was charged under the general section number without particularizing the subsection"); and 41 Am. Jur. 2d Indictments and Informations § 110.  Moreover, the failure to include such citations could have been cured by amendment of the indictment, eliminating the likelihood that the absence would have altered Petitioner's decision to plead guilty.  *See State v. Duncan,* 149 Ariz. 357, 361, 718 P.2d 1010, 1014 (Ariz.App. 1985) ("The general rule is that error in the citation of a statute does not invalidate an indictment unless the error misleads the defendant to his prejudice.").

trial judge.")[8]  Nonetheless, as noted by Respondents, it seems unlikely that a judge would not impose a consecutive sentence for the conspiracy to commit first degree murder of the victim.  This would have added at least 25 additional years imprisonment.  *See* Ariz. Rev. Stat. §§ 13-1105(C) (first degree murder is class 1 felony), and 13-1003(D) (1999) (conspiracy to commit class 1 felony "punishable by a sentence of life imprisonment without possibility of release on any basis until the service of twenty-five years").

Thus, the only way Petitioner would have been assured of being better off without the plea agreement he made, was if the State would have been willing to make the same plea agreement, but just without the stipulation as to sentencing.  There is no indication that the State was willing to make such an agreement.  Thus, the undersigned finds no real likelihood that even had trial counsel fully informed Petitioner about all possible outcomes with regard to concurrent or consecutive sentences, that Petitioner would not have made entered into the plea agreement.

Moreover, Petitioner was advised by the trial court at his plea proceeding that he was foregoing the potential for concurrent sentences:

> THE COURT: And do you understand that while the Court would have the option of running these sentences concurrently, you have agreed with the State that the sentences will run consecutive, so one after the other.
> Is that your agreement?
> THE DEFENDANT: Yes, Your honor.

(Exhibit XX, R.T. 5/15/00 at 6-7.)[9]  Despite being advised of the foregone possibility of concurrent sentencing, and Petitioner's acknowledgment of his understanding, Petitioner

---

[8]  The general Arizona statute addressing such determination, Ariz. Rev. Stat. § 13-708, provides no limitations on the judge's discretion, but merely establishes a rule of construction when the judge is silent upon the concurrent/consecutive determination.  *State v. Ward,* 200 Ariz. 387, 389, 26 P.3d 1158, 1160 (Ariz.App. 2001) ("Section 13-708 neither creates a presumption for consecutive or concurrent sentences, nor imposes any restrictions on a trial court's discretion in choosing between consecutive or concurrent sentences."). *See also* Ariz. R. Crim. Proc. 26.13 (restating rule of construction in § 13-708).

[9]  Petitioner's Second Supplemental Reply takes exception with Respondents' paraphrasing of this excerpt.  (#51 at 3.)  The paraphrase (#51 at 2) is in accord with the undersigned's reading of the transcript.

proceeded to plead guilty.  *See Chau Hon Mow v. United States,* 730 F.2d 1308 (9th Cir.1984), *cert. denied,* 470 U.S. 1031 (1985) (even if counsel did not properly advise regarding sentence, defendant could not assert ineffective assistance where the court informed him before entering plea).

Based upon the foregoing, the undersigned finds that any deficiency by counsel in advising Petitioner in this regard did not prejudice Petitioner.

**Advice re Dismissals** - Petitioner argues that counsel was ineffective because trial counsel advised Petitioner that all other charges would be dismissed with prejudice in exchange for his guilty pleas under the plea agreements.  (Petition, #1 at physical p. 15, Part J, p. "2".)  Although the trial court's Sentence in the sexual assault case failed to include the dismissal of Count 5 (see Exhibit P, Sentence at 3), the court orally dismissed the count: "At this time it's ordered in CR 99-91712, dismissing Counts 2, 3, 4 and 5."  (Exhibit YY, R.T. 6/15/00 at 29.)

In his Supplemental Reply (#49), Petitioner takes exception with Respondent's reliance on the transcript.  However, as pointed out by Respondents, Arizona law makes the trial court's oral pronouncement binding.  "Oral pronouncement in open court controls over the minute entry." *State v. Whitney,* 159 Ariz. 476, 487, 768 P.2d 638, 649 (1989).  "Where there is a discrepancy between the oral sentence and the written judgment, the oral pronouncement of sentence controls."  *State v. Hanson,* 138 Ariz. 296, 304-305, 674 P.2d 850, 858 - 859 (Ariz.App. 1983).

Petitioner fails to show any ineffectiveness of counsel with regard to his representation about the charges to be dismissed.

**Advice re Rights Given Up** - Next, Petitioner argues that his plea was involuntary because trial counsel failed to advise Petitioner about the rights he would be giving up by pleading guilty.  Petitioner advised the trial court of the exact opposite:

> THE COURT: Did you discuss with [your attorney] the Constitutional rights  you give up when you enter these "guilty" pleas?
> THE DEFENDANT: Yes, Your Honor.

(Exhibit XX, R.T. 5/15/00 at 9.)  "These solemn declarations made in open court carry a

strong presumption of verity." *United States v. Rivera-Ramirez*, 715 F.2d 453, 458 (9th Cir.1983).   Petitioner offers nothing besides his bare allegation to overcome that presumption.   That is not sufficient.

Moreover, the trial court carefully reviewed his waiver of his rights to: plead not guilty, counsel, jury trial, presumption of innocence, compulsory cross examination and confrontation, silence, and direct appeal.   (Exhibit XX, R.T. 5/15/00 at 9-11.)   Petitioner explicitly acknowledged each of those rights, and then explicitly consented to giving up those rights.

> THE COURT: And do you understand when you enter "guilty" pleas, you do give up those rights?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Is it your wish to do that at this time?
> THE DEFENDANT: Yes it is, Your Honor.

(Exhibit XX, R.T. 5/15/00 at 11.)   Petitioner does not allege that the trial court's advice was insufficient.   Thus, again, any deficiency in counsel's advice was cured by the court's advice. *Chau Hon Mow, supra.*

**No Assertion that Plea Would Have Been Rejected** - As noted above, Petitioner must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial or would have gotten a better plea offer.  *Hill*, 474 U.S. at 58-59; *Strickland*, 466 U.S. at 694.   Petitioner makes no assertion that he would have done so.   He simply complains that the advice of counsel was defective.   In light of the benefits obtained by Petitioner under the plea agreement, and the risks of his conviction at trial, the undersigned finds no basis for believing that   Petitioner would have rejected the plea agreement.

**Conclusion re Voluntariness of Plea** - Based upon the foregoing, the undersigned concludes that Petitioner's plea was not upon the basis of advice from counsel who rendered effective assistance, and thus the Petitioner's plea was entered knowingly and voluntarily. Accordingly, Ground 1 of both Petitions is without merit.

**B.  EFFECT OF GUILTY PLEA AS WAIVER**

Respondents assert that as a result of his guilty plea, Petitioner has waived his right to assert any claims other than the voluntariness of the plea.   (Answer, #21 at 7-8.) Generally, that is the case.

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Moreover, Petitioner's written Plea Agreement provided:

> Unless this plea is rejected by the court or withdrawn by either party, the defendant hereby waives and gives up any and all motions, defenses, objections or requests which he has made or raised, ro could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement.  Be entering this agreement the defendant further waives and gives up the right to appeal.

(Exhibit O, Plea Agreement at 2.)

Because, as discussed above, Petitioner's plea was knowingly and voluntarily entered, he is bound by these waivers.

**Ineffective Assistance Claims** - This waiver would apply to Petitioner's Ground 2 in CV-07-0295 and Ground 3 in CV-07-0296.  In the former, Ground 2 asserts trial counsel's ineffectiveness for failing to: (1) pursue pretrial discovery; (2) properly handle the motion to suppress and related proceedings; and (3) properly advise Petitioner on an entrapment defense. (CV-07-0295, Petition #1 at physical page 17-19.)   In the latter, Ground 3 asserts trial counsel's ineffectiveness for failing to: (1) properly handle the motion to suppress and related proceedings; and (2) advising Petitioner to "agree to everything when he was questioned by the Judge" at the guilty plea proceedings.   (CV-07-0296, Petition #1 at physical pages 18-20.)  All of these claims relate to conduct of counsel prior to entry of the guilty plea and Petitioner does not assert that they precluded his plea from being knowing and voluntary.

Consequently, these claims were waived by Petitioner's guilty plea. *See U.S. v. Broce*, 488 U.S. 563, 572 (1989) (discussing guilty plea's waiver of errors by counsel).

**Double Jeopardy Errors** - In Ground 3 of CV-07-0295 and Ground 4 in CV-07-0296, Petitioner argues that the use of an outdated prior conviction against him to enhance his offense was a violation of the Double Jeopardy Clause. Ordinarily, double jeopardy claims are excluded from the general waiver inherent in a guilty plea. "Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna v. New York,* 423 U.S. 61, 62 (1975).

Respondents argue that Petitioner's guilty plea did waive these claims because no double jeopardy issue was apparent on the face of the record. *See e.g. U.S. v. Broce*, 488 U.S. 563, 572 (1989) (distinguishing and enforcing general waiver on simultaneous guilty plea on multiple charges which were arguably the same offense, because the overlap was not apparent on the face of the charges). Here, however, the very nature of Petitioner's claim (that a sentencing enhancement based on a stale conviction violates double jeopardy), joined with the underlying facts having been pled in the Indictment as amended by the Allegation of Historical Priors, precludes application of the *Broce* exception. Petitioner's claim presents a question of law which requires only an examination of the criminal charge on its face and does not depend on an undeveloped factual record. (It is Respondents' arguments to avoid the double jeopardy issue which require information outside the charging documents.)

On the other hand, Petitioner made an express waiver of his claims and defenses in his plea agreement. Such an express waiver can bar presentation of a double jeopardy claim. *See U.S. v. Petty*, 80 F.3d 1384 (9th Cir. 1996) (double jeopardy claim barred by agreement to waive appellate rights). Here, however, Petitioner's claim is not that he had some defense to his conviction, but that his sentence was improper as a violation of the double jeopardy clause. "[A] defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the

maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *U.S. v. Marin,* 961 F.2d 493, 496 (4ᵗʰ Cir. 1992).  Accepted at face value, Petitioner's argument is that his sentence included punishment for a prior crime for which he had already been convicted and sentenced.  Surely a waiver of defenses or appeal rights could not extend to permitting an imposition of a sentence of that sort.

Accordingly, the undersigned concludes that this claim was not waived by virtue of Petitioner's guilty plea or his express waiver..

**Brady Disclosure** - In Ground 4 in CV-07-0295, Petitioner argues that the prosecution failed to disclose favorable evidence in electronic surveillance.  Petitioner suggests that the electronic surveillance not provided by the prosecution would have shown that the confidential informant relied upon for his conspiracy to commit murder charges was an "agent provocateur" who entrapped him.  Such information could establish an affirmative defense.

However, in *U.S. v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court held that the waivers inherent in a guilty plea extended to claims that the prosecution failed to disclose favorable impeachment or affirmative defense materials in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[10]  "We do not believe the Constitution here requires provision of this [affirmative defense] information to the defendant prior to plea bargaining." 536 U.S. at 633.

Accordingly, this claim was waived by Petitioner's guilty plea.

**Grand Jury Panel** - In Ground 2 in case number CV-07-0296, Petitioner argues that the grand jury had been improperly impaneled in the sexual assault case.  Petitioner's guilty plea waived this claim. *See Tollett v. Henderson,* 411 U.S. 258, 266 (1973) (holding guilty plea waived challenge to grand jury, but distinguishing related claim based on ineffective assistance).

**Summary re Waiver** - Based on the foregoing, the undesigned concludes that

---

[10] *Ruiz* further found that the right to all disclosure could be expressly waived as part of a plea agreement. 536 U.S. at 633. Here, however, the Plea Agreement's wavier of rights did not extend to *Brady* disclosures.

Petitioner's guilty plea and plea agreement resulted in a waiver of Petitioner's Ground 2 in CV-07-0295 and Ground 3 in CV-07-0296 (ineffective assistance), Ground 4 in CV-07-0295 (*Brady* disclosures), and Ground 2 in case number CV-07-0296 (Grand Jury panel). Conversely, the undersigned finds that Ground 3 of CV-07-0295 and Ground 4 in CV-07-0296 (Double Jeopardy) were not waived by either his guilty plea or plea agreement.

## C.  DOUBLE JEOPARDY CLAIM

In Ground 3 of CV-07-0295 and Ground 4 in CV-07-0296, Petitioner argues that the use of an outdated prior conviction against him to enhance his offense was a violation of the Double Jeopardy Clause.  Liberally construed, Petitioner's theory runs thus: (1) his sentence was "enhanced" based on a 1985 conviction; (2) under the state statutes, that conviction was too old to be counted as a sentencing enhancement for the instant conviction; and (3) therefore the extra years imprisonment must be construed as new punishment for the old conviction.

Respondents properly argue that the use of a prior conviction to enhance a sentence is not a double jeopardy violation.  "An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'"  *Monge v. California,* 524 U.S. 721, 728 (1998) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)).

If Petitioner did not assert that the statutes did not authorize the enhancement, *Monge* would resolve the issue.  But, he makes the argument, and it could, if correct, make all the difference.[11]

However, Respondents also argue that Petitioner's 1985 conviction was in fact not

---

[11]  The undersigned is not unmindful of (at least) the appearance that Petitioner is stretching to make a routine sentencing error into a constitutional claim.  Because the facts do not support Petitioner's claim, the presumption is made that double jeopardy would extend to an unauthorized sentencing enhancement based on a prior conviction.

stale.[12]   Under Ariz. Rev. Stat. § 13-604(U)(1)(b) (1998)[13] a Class 2 or 3 felony prior conviction counted for enhancement purposes only if it had been committed within ten years of the offense being sentenced.  Here, Petitioner's sentence was enhanced based on a 1985 conviction for trafficking in stolen property which was committed on May 30, 1984. (Exhibit G, Allegation of Historical Priors.)  His instant offenses were committed on April 15, 1999 and August 18, 1999.  (Exhibit X, PCR Order 5/21/03.)  Ordinarily, that would have been 5 years too late for the 1985 conviction to count.

However, the statute also provided that "[a]ny time spent incarcerated is excluded in calculating if the offense was committed within the preceding ten years."  Ariz. Rev. Stat. § 13-604(U)(1)(b) (1998).    Petitioner acknowledges that he was in prison on the 1985 conviction until March 16, 1989.  (Exhibit OO, Mot. Rehearing at 10.)  That would only extend the utility of the 1985 conviction through March 15, 1999, one month too little to apply to his sexual assault offense, and over five months too little to apply to his conspiracy offense.   Respondents argue, however, that Petitioner also spent time incarcerated in connection with his 1992 conviction.  "The plain meaning of the phrase 'any time spent incarcerated' indicates that the Legislature intended to exclude all time that a defendant spent in prison, regardless of whether that incarceration was for the particular prior conviction at issue or for some other crime."  *State v. Derello,* 199 Ariz. 435, 439, 18 P.3d 1234, 1238 (Ariz.App 2001).

Petitioner's 1992 conviction was issued on April 6, 1992.  (Exhibit G, Alleg. Hist. Priors at 1.)  He was incarcerated until November 16, 1993.  (#31, Exhibit WW, R.T. 5/5/00 at 8.)  Thus, Petitioner spent  some 19 months incarcerated on that conviction.  That would

---

[12]  Respondents also argue that because Petitioner had four felony priors, the third or greater felonies, regardless of their age, counted as historical priors under Ariz. Rev. Stat. § 13-604(U)(1)(d) (1999) ("Any felony conviction that is a third or more prior felony conviction").  While that might have been an effective argument at trial, the court did not sentence Petitioner on the basis of his third or greater prior, but on the 1985 conviction, which was his earliest conviction.  (*See* Exhibit P, Sentence at 2; and Exhibit G, Alleg. Hist. Priors.)

[13]  Retained by Az. Sess. Laws 1999, Ch. 261 § 5, but renumbered to subsection (V).

1  extend his 1985 conviction until October, 2000, more than enough to take it within the ten

2  year limit of § 13-604(U)(1)(b) for application to the instant 1999 offenses.

3      Accordingly, Petitioner's sentence was properly enhanced based upon his 1985

4  conviction, and no new sentence on that conviction was included in the instant sentence.

5  Therefore, Petitioner's double jeopardy claim is without merit.

6

7  **D.  SUMMARY RE PETITIONS**

8      Based on the foregoing, the undersigned reaches the following conclusions concerning

9  the grounds for relief asserted in Petitioner's two petitions.   As to CV-07-0295 (Attempted

10  Murder): Ground 1 (Involuntary Plea) is without merit; Ground 2 (Ineffective Assistance)

11  was waived by his guilty plea and is without merit; Ground 3 (Double Jeopardy) is without

12  merit; and Ground 4 (*Brady* Disclosures) was waived by his guilty plea and thus is without

13  merit.   As to CV-07-0296 (Sexual Assault): Ground 1 (Involuntary Plea) is without merit;

14  Ground 2 (Grand Jury) was waived by his guilty plea and thus is without merit; Ground 3

15  (Ineffective Assistance) was waived by his guilty plea and thus is without merit; and Ground

16  4 (Double Jeopardy) is without merit.

17

18  **E.  MOTION FOR TEMPORARY RELIEF**

19      On February 13, 2009, Petitioner filed a Motion for Relief (#57) seeking temporary

20  relief.   Petitioner seeks to be released pending a ruling in this case, citing his lack of

21  opportunity to grieve with his family over the May, 2008 death of his sister.  Respondents

22  filed their Response on February 19, 2009 (#58).  Petitioner has not replied.

23      Federal Rules of Appellate Procedure Rule 23 governs the release of a prisoner

24  collaterally attacking a conviction through a habeas petition.  *See United States v. Mett,* 41

25  F.3d 1281, 1282 (9th Cir. 1994) (attacking a federal sentence); and *Marino v. Vasquez,* 812

26  F.2d 499, 507 (9th Cir. 1987) (attacking a state court sentence).  The courts have "reserved

27  bail for 'extraordinary cases involving special circumstances or a high probability of

28  success.'" *Mett*, 41 F.3d at 1282.

For the reasons discussed herein above, Petitioner cannot show a probability of success. Moreover, a denial of his petition as recommended herein would render this request moot.

"Special circumstances" have been found to include such things as "a serious deterioration of health while incarcerated, and unusual delay in the appeal process", *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1987) and situations where "the sentence was so short that if bail were denied and the habeas petition were eventually granted, the defendant would already have served the sentence", *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3rd Cir. 1992). The death of a family member is not such a special circumstance. It is wholly unrelated to Petitioner's habeas proceeding, and the separation from family, even at such times, is a necessary consequence and part of the punitive nature of imprisonment.

Finally, Petitioner, offers nothing to support his request to be provided copies of the Bail Reform Act.

Accordingly, this motion should either be denied as without merit, or denied as moot if the recommendation to deny the Petition is adopted.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Petitioner's "Motion for Right to Jury Trial," filed July 2, 2008 (#45) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, filed February 9, 2007 (#1) in case CV-07-0295-PHX-SMM (JRI)  be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, filed February 9, 2007 (#1) in case CV-07-0296-PHX-SMM (JRI)  be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Temporary Relief, filed February 13, 2009 (#57) be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth

1    Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

2    *Appellate Procedure*, should not be filed until entry of the district court's judgment.

3        However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

4    have ten (10) days from the date of service of a copy of this recommendation within which

5    to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

6    Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file

7    a response to the objections.  Failure to timely file objections to any factual or legal

8    determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

9    *novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

10   Cir. 2003)(*en banc*).

11

12   DATED: March 11, 2009                    _____

13   S:\Civil Cases\Active Cases\Eastman\2-07CV0295-07-0295-SMM-RR-09-03-09 so HC.wpd           JAY R. IRWIN
                                                United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28